FILED

07/25/2022

Clerk of the
Appellate Courts

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT JACKSON
## June 7, 2022 Session

## TONDREON BOWLES A/K/A TONDREON MERRIWEATHER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 15 01457  Chris Craft, Judge**

_____

### No. W2021-00808-CCA-R3-PC

_____

Petitioner, Tondreon Bowles, also known as Tondreon Merriweather, appeals from the Shelby County Criminal Court's denial of post-conviction relief. Petitioner argues that his guilty plea to being a convicted felon in possession of a firearm, a Class C felony, was not knowingly and voluntarily entered and that he received the ineffective assistance of counsel. Petitioner claims that he believed he was pleading guilty to being a convicted felon in possession of a handgun, a Class E felony, and therefore, his sentence is illegal. Following a hearing, the post-conviction court denied relief. Discerning no error, we affirm the judgment of the post-conviction court; however, we remand the case to the trial court for entry of judgment forms in counts two and four.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed and Case Remanded

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Terrell L. Tooten, Cordova, Tennessee, for the appellant, Tondreon M. Bowles.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jamie Kidd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Guilty Plea Submission Hearing*

Petitioner was indicted in a four-count indictment for first degree premeditated murder in count one; employing a firearm during the commission of a dangerous felony in count two; possession of a firearm having been convicted of violent felony (aggravated burglary) in count three; and possession of a handgun having been convicted of felony theft in count four.

On April 9, 2018, Petitioner entered guilty pleas to voluntary manslaughter in count one and possession of a firearm having been convicted of a violent felony in count three. Counts two and four were nolle prossed. The State gave the following recitation of facts underlying Petitioner's convictions as a basis for his guilty pleas:

> [O]n July 7[,] 2014[,] [Petitioner] and the victim, Mr. Kentrell Glover, got into a verbal altercation in the parking lot of 3685 American Way.
>
> There is a video tape of the incident in which [Petitioner] and [the victim] can be seen arguing. It can be seen that the victim has a gun as well as [Petitioner]. [Petitioner] walks away from the argument for approximately one or two seconds, then he turns around and reengages in argument with [the victim], who is at that point still armed. [Petitioner] fires shots which strike [the victim]. [The victim] fires back. [The victim], however, ultimately dies due to his wounds. At the time [Petitioner was] a convicted felon, having previously been convicted of an aggravated burglary.

Upon questioning by the trial court, Petitioner stated that he stopped attending school in eleventh grade. He stated that he could read, and he acknowledged his signature on the petition requesting acceptance of his guilty pleas and waiving his right to a trial by jury. The trial court explained to Petitioner that he had the right to plead not guilty, the right to have a jury decide his guilt, the right to have his attorney cross-examine any witnesses against him, the right to testify or not to testify, and the right to compel witnesses to testify on his behalf. Petitioner agreed that he understood the rights he was waiving by entering his guilty pleas.

The trial court explained that Petitioner was charged with first degree premeditated murder and that if convicted, he faced a sentence of life imprisonment. The court further explained that Petitioner could be convicted of the lesser-included offense of second degree murder, which carried a sentence of between 15 and 60 years. The court told Petitioner he was pleading guilty to voluntary manslaughter in exchange for a three-year sentence, the minimum sentence within the range. The trial court then told Petitioner that the offense of "being a convicted felon in possession of a *handgun* . . . with a prior aggravated burglary

conviction" was a Class C felony. The court explained to Petitioner that he was entering a "*Hicks*" plea,[1] whereby he would receive an out-of-range sentence of 14 years with a release eligibility of 30 percent. The court stated, "So what you're doing is, in order to get the benefit of reducing the voluntary manslaughter down[,] you are agreeing to plead guilty to more time than you could get in your range but at a lesser percentage." The trial court stated that Petitioner's sentences would run consecutively, resulting in an effective 17-year sentence with a 30-percent release eligibility. Petitioner acknowledged that he understood.

The trial court explained to Petitioner that by entering guilty pleas, he was waiving his right to appeal his convictions and sentences, and Petitioner again acknowledged that he understood. At the conclusion of the plea submission hearing, the trial court found that Petitioner was entering his guilty pleas knowingly and voluntarily and accepted Petitioner's guilty pleas to voluntary manslaughter and "being a convicted felon in possession of a handgun[.]"

The record contains judgment forms in counts one and three. In count three, the judgment form reflects both an indicted offense and a conviction offense of "CFPHG" and classifies it a C felony in both spaces. The judgment does not include a code section for either the indicted offense or the conviction offense. The sentence reflected on the judgment form in count three is 14 years to be served consecutively to Petitioner's three-year sentence in count one. The "Special Conditions" box on the judgment form in count three states: "[Petitioner] pleading as a Range III offender status w[ith] Range I release eligibility – Total of 17 years at 30% RED." Absent from the record are judgment forms in counts two and four.

*Post-Conviction Proceedings*

At the outset of the post-conviction hearing, post-conviction counsel informed the court that Petitioner wanted to address the court. Petitioner told the post-conviction court that he wished to dismiss post-conviction counsel for "not corresponding" with him and "not addressing any issues." A lengthy exchange occurred between Petitioner and the post-

---

[1] Our supreme court has approved the use of so-called "hybrid" sentences, whereby a defendant pleads guilty to a sentence length in one range but a different range classification for purposes of calculating the release eligibility date. *See Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997). The practice is limited to an agreement for a sentence length which does not exceed the statutory maximum. *See Hoover v. State*, 215 S.W.3d 776 (Tenn. 2007) ("A plea-bargained sentence may legally exceed the maximum available in the offender Range so long as the sentence does not exceed the maximum punishment authorized for the plea offense.").

conviction court, in which the court repeatedly assured Petitioner that his claims would be addressed at the hearing.

Petitioner testified that he received an effective sentence of 17 years for his convictions. He testified that his trial counsel told him "the ramification could be greater or it could be lesser" if he had proceeded to trial. Petitioner decided to plead guilty because trial counsel "pressured" him and "point[ed] out to [him] the chance of [his] not seeing [his] child." Petitioner then stated that he was "not challenging the conviction" and that "the only thing . . . [he] was challenging about it" was the classification of felony on the judgment form in count three. Petitioner asserted that the judgment should have reflected a Class E felony conviction, which carried a maximum sentence of six years.

The post-conviction court explained to Petitioner that the class of felony was determined by the nature of the prior conviction and that in Petitioner's case, the prior felony was aggravated burglary, a violent crime, making Petitioner's conviction for possessing a firearm a Class C felony. Petitioner continued to dispute the classification, and the post-conviction court cited the controlling statute, Tennessee Code Annotated section 39-17-1307. Petitioner insisted that his conviction should have been a Class E felony under the "Tennessee sentencing matrix." The court told Petitioner, "I would not have taken the plea because I'm not going to convict you of something when you're not guilty of it." The court reminded Petitioner that, at the guilty plea submission hearing, the court "explained to [Petitioner] [he was] pleading guilty [to] a [C]lass C felony" and the court had "explained to [Petitioner] what it carried." Petitioner responded that he "didn't even hear that part." Petitioner stated that he would not have pleaded guilty and would have proceeded to trial if he knew the conviction was a C felony rather than an E felony. The court again explained, "I was trying to get you to understand that you were not charged with a C – with an E felony, you were charged with a C felony of possessing a handgun or a firearm with two prior burglary convictions, which are crimes of violence under the statute."

After several interruptions by Petitioner, the post-conviction court found Petitioner in contempt and sentenced him to 10 days for each of 10 total contempt findings to be served consecutive to each other and consecutive to Petitioner's current sentence. Petitioner then abruptly left the witness stand, and the post-conviction court found that Petitioner "abandoned his petition" and ordered it be dismissed.

In an order filed on December 13, 2019, the post-conviction court recounted Petitioner's disruptive behavior throughout the hearing and noted that Petitioner "left the witness stand, without having been asked to step down, and stormed off to the courtroom door to the jail, continuing to yell at the court that he would not allow this, and received another 10 days as he slammed the jail door shut, leaving the courtroom." The post-

- 4 -

conviction court determined that Petitioner "waived and forfeited his right to have a hearing on his petition," and the court dismissed the petition.

On January 9, 2020, the post-conviction court entered an order setting aside the December 13, 2019 order, finding that the judgment form for count three erroneously stated that Petitioner pleaded guilty to being a convicted felon in possession of a handgun, a Class E felony at the time of the offense, rather than the indicted offense of being a convicted felon in possession of a firearm, a Class C felony.

At a subsequent hearing, the post-conviction court acknowledged Petitioner was "under the impression that [he] pled guilty to being a convicted felon in possession of a handgun because that was on [his] judgment sheet." The court attempted to clarify the issue:

> I'm thinking you were under the impression that you pled guilty to convicted felon in possession of a handgun. You did not. You pled guilty to convicted felon in possession of a firearm. That's what the indictment charged you with. The indictment did not charge you with possession of a handgun, which is an E felony. You were charged with a C felony.

The State informed the court that Petitioner was charged by a superseding indictment, which contained charges for both offenses, convicted felon in possession of a firearm in count three and convicted felon in possession of a handgun in count four. The court then explained to Petitioner, "[c]ount three, which you pled guilty to, charges you with having the firearm. Count four was the handgun." The court stated that Petitioner had "a right to have a hearing on" the issue of the voluntariness of his plea.

An evidentiary hearing was conducted on May 24, 2021. Trial counsel testified that he was appointed to represent Petitioner in December, 2016. He testified that he explained to Petitioner the sentencing exposure if Petitioner were convicted of the indicted offenses. Trial counsel stated that "there was a video of this entire crime," but he was "cautiously optimistic" that the jury would reject first degree murder. Regarding the plea offer, trial counsel stated that he and Petitioner "were both very happy to have received that offer and to settle the case in that way." Trial counsel testified that he "spent ample time going over everything" with Petitioner. Petitioner did not testify at the hearing.

In a written order entered on July 6, 2021, the post-conviction court denied relief and dismissed the post-conviction petition. The court found that the transcript of the guilty plea hearing "clearly shows a voluntary, knowing acceptance of the terms of the plea, a total of 17 years at 30% parole eligibility, with the 3[-]year sentence for the homicide in count one . . . consecutive to the 14 years for [c]ount [t]hree." The court noted that it

"distinctly remember[ed] its surprise at the pleased countenance of the [P]etitioner in accepting the 17[-]year sentence," given Petitioner's history of volatile and combative behavior in court. The court found "very credible" trial counsel's testimony that Petitioner was pleased with the State's offer.

The post-conviction court acknowledged that it "failed to recognize the mistake of the prosecutor" in listing the offense on the waiver of rights form as "CFPHG."[2] Consequently, the court erroneously stated that Petitioner was pleading guilty to being a convicted felon in possession of a "handgun" at the plea colloquy. The court concluded that "even if" Petitioner's trial counsel were deficient for failing to correct the conviction offense and for failing to correct the trial court's questions to Petitioner during the plea colloquy, Petitioner was not prejudiced by the deficiency because "[P]etitioner would still have gladly taken the plea rather than to have insisted on a trial."

The post-conviction court denied Petitioner's request to "find the plea to [c]ount [t]hree illegal and resentence him to the E felony in [c]ount [f]our . . . because [P]etitioner did not enter a plea of guilty to [c]ount [f]our, which the State nolle prosequied upon his guilty plea to [c]ount [t]hree [and] because the State allowed [P]etitioner to plead guilty to three years to voluntary manslaughter because of the 14[-]year plea to [c]ount [t]hree." The court determined that Petitioner pleaded guilty to "Convicted Felon in Possession of a Firearm, Class C felony, as plea-bargained" and entered a corrected judgment in count three to reflect the same. Petitioner appeals the denial of his petition for post-conviction relief.

### *Analysis*

On appeal, Petitioner contends that the post-conviction court erred in denying his petition because he received the ineffective assistance of counsel and his guilty plea in count three was not entered knowingly and voluntarily. The State argues that the post-conviction court properly determined that the judgment form for count three contained a clerical error, that Petitioner knowingly and voluntarily pleaded guilty, and that Petitioner did not receive the ineffective assistance of counsel.

We review "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (citing *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); *Calvert v. State*, 342 S.W.3d 477,

---

[2] The waiver of rights form and plea submission are not contained in the record on appeal.

485 (Tenn. 2011)). However, the post-conviction court's underlying findings of fact may not be disturbed unless the evidence preponderates against them. *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009) (citing Tenn. R. App. P. 13(d); *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006)). Therefore, the appellate court is "not free to re-weigh or re-evaluate the evidence, nor [is it] free to substitute [its] own inferences for those drawn by the post-conviction court." *Whitehead*, 402 S.W.3d at 621 (citing *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001)).

To demonstrate ineffective assistance of counsel in the context of a guilty plea, a petitioner must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 669 (1984). Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill*, 474 U.S. at 56 (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), and the state standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. *Boykin*, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904. The trial court looks to the following factors in determining whether the defendant's guilty pleas were knowing and voluntary:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges

- 7 -

against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904.

In finding that Petitioner's guilty plea was knowing and voluntary, the post-conviction court accredited trial counsel's testimony that Petitioner was "very happy" with the plea offer and that trial counsel "spent ample time going over everything" with Petitioner. The court noted that Petitioner's behavior in court was substantially improved compared to his behavior at prior court appearances, indicating that Petitioner was pleased with the disposition of his case. The court found that Petitioner answered affirmatively that he understood the sentence being imposed, the potential sentence if he had gone to trial, the release eligibility, the nature of a *Hicks* plea, and the rights Petitioner was waiving by entering his guilty plea.

The transcript of the guilty plea hearing shows that the trial court questioned Petitioner extensively about his understanding of the nature of his guilty plea in count three as a *Hicks* plea. The court explained to Petitioner that he was pleading out-of-range "in order to get the benefit of reducing the voluntary manslaughter" sentence. Although the trial court erroneously stated that Petitioner was pleading guilty in count three to "being a convicted felon in possession of a *handgun* . . . with a prior aggravated burglary conviction," the court stated that it was "a Class C felony, [which] carrie[d] three to [15] years in prison" depending on the offender status. The court gave a detailed explanation of the agreed upon sentence in count three, stating that Petitioner was pleading out-of-range and receiving a 14-year sentence with a 30-percent release eligibility, to be served consecutively to his sentence in count one. The court asked Petitioner if "all this [had] been explained to [him,]" and Petitioner replied, "Yes, sir." The trial court asked Petitioner if that was his understanding of the sentence length and service, and Petitioner replied, "Yes, sir." The court asked Petitioner, "Is there anything else about this plea that you don't understand? Anything you're confused about [and] you want me to explain for you?" Petitioner responded, "No, sir."

We conclude that the evidence does not preponderate against the post-conviction court's finding that Petitioner's guilty plea was knowingly and voluntarily entered or that Petitioner was not prejudiced by any alleged deficiency of his trial counsel. Petitioner was neither coerced nor pressured into the plea agreement. The court made a thorough and direct inquiry as to the voluntariness of Petitioner's plea. Petitioner stated under oath that he understood the rights he was waiving and the sentence he was receiving. The subsequent discovery of an error on the judgment form does not negate the evidence that at the time of Petitioner's guilty plea, he understood the plea and its consequences.

- 8 -

Tennessee Rule of Criminal Procedure 36 states that a court "may at any time correct clerical mistakes in judgments . . . arising from oversight or omission." Clerical errors arise "simply from a clerical mistake in filling out the uniform judgment document." *Cantrell v. Easterling*, 346 S.W.3d 445, 449 (Tenn. 2011). Our supreme court has held that "to determine whether a clerical error has been made, a court ordinarily must compare the judgment with the transcript of the trial court's oral statements." *State v. Brown*, 479 S.W.3d 200, 213 (Tenn. 2015). If a conflict between the transcript and the judgment exists, then the transcript of the court's oral statements control. *Id*.

The April 9, 2018 guilty plea transcript reflects that the trial court and the State *incorrectly* stated the offense charged in count three of the indictment as possession of a "handgun" rather than possession of a "firearm." The judgment reflects that Petitioner entered a guilty plea to "CFPHG," which the post-conviction court interpreted to mean being a convicted felon in possession of a handgun. By statutory definition, a "handgun" is a "firearm." T.C.A. § 39-11-106(a)(13) and (19). The critical distinction here is that Petitioner was previously convicted of aggravated burglary, a violent crime, making his possession of a firearm a Class C felony. *See* T.C.A. § 39-17-1307(b)(1)(A) (2014) ("A person commits an offense who unlawfully possesses a firearm . . . and [h]as been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon[.]"); T.C.A. § 39-17-1307(b)(2) (2014) ("An offense under subdivision (b)(1)(A) is a Class C felony.").

What is consistently and *correctly* stated in the April 9, 2018 plea transcript is Petitioner was pleading guilty in count 3 to a Class C felony, and agreeing to an out-of-range sentence of 14 years, with a release eligibility date of 30 percent. Further, the plea court clearly told Petitioner that the net sentence he was agreeing to was 17 years. The judgment correctly indicated that Petitioner was indicted and convicted of a Class C felony in count 3.[3] The misstatement of "handgun" verses "firearm" is of absolutely no consequence. Petitioner is not entitled to relief.

Lastly, while the special conditions box on the judgment form in count one states that the State was entering a nolle prosequi as to counts two and four of the indictment, the record before us does not contain separate judgment forms for each of these counts, as directed by our supreme court in *State v. Berry*, 503 S.W.3d. 360, 363 (Tenn. 2015) ("For charges resulting in a not guilty verdict or a dismissal, the trial court should 'enter judgment accordingly' as to the respective count." (citing Tenn. R. Crim. P. 32(e)(3)). Therefore, we remand the case to the trial court for entry of separate judgment forms showing the entry of nolle prosequi as to counts two and four, if not previously entered.

---

[3] On July 6, 2021, the post-conviction court entered a corrected judgment form for count 3 which removed the "CFPHG" notation from the April 9, 2018 judgment form.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the post-conviction court but remand the case for entry of judgment forms, if needed, as specified in this opinion.

_____
TIMOTHY L. EASTER, JUDGE